UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON WILD,<br><br>                        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                        Respondent. | Case No.: 18CV2193, 15CR02771-AJB<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255; AND**<br><br>**(2) DENYING PETITIONER'S MOTION TO APPOINT COUNSEL**<br><br>**(Doc. Nos. 142, 157)** |

Presently before the Court are Petitioner Jason Wild's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 142), and Petitioner's motion to appoint counsel, (Doc. No. 157). The Court has fully considered this matter, including a review of Petitioner's brief and the authorities cited therein. For the reasons set forth below, the Court **DENIES** Petitioner's motion to vacate and **DENIES** Petitioner's motion to appoint counsel.

# BACKGROUND

On November 21, 2016, a jury found Petitioner guilty of wire fraud. (Doc. No. 115 at 73.) Petitioner was sentenced to nine (9) months in custody and three (3) years of supervised release. (Doc. No. 105 at 2–3.)

The facts leading up to Petitioner's indictment and subsequent guilty verdict are as follows. Michael Storm and Jason Wild were both in the U.S. Marine Corps as reservists, and had been called to active duty at Camp Pendleton. (Doc. No. 60 at 4.) Accordingly, they were both allowed certain travel benefits due to their status as Marine reservists living outside the local commuting area. (*Id.*) They were allowed lodging reimbursements, per diem benefits for meals and incidental expenses, and reimbursement for certain transportation costs. (*Id.*) To obtain these benefits, a Marine must submit a claim on a DD Form 1351-2. (*Id.*) A Marine must make those claims within five days of the completion of each 30-day period of service and a Marine is required to submit proof of payment. (*Id.*)

Petitioner owned a home at 1477 Saddle Way, Oceanside, California. (*Id.*) However, Petitioner falsely claimed that he was renting a fellow Marine's home located at 27966 Via Mirada, Laguna Niguel, California from September 16, 2006 to July 1, 2007 and April 30, 2008 to May 11, 2008. (*Id.* at 4–5.) Due to this false representation, Petitioner received payments totaling $57,913 from the Government as reimbursement for living costs. (*Id.* at 5.) To support these false claims, Petitioner submitted fake lease agreements and rental receipts showing purported rental payments. (*Id.* at 6.)

Petitioner obtained Kevin McDermott to represent him when the Naval Criminal Investigative Service opened an investigation into Petitioner's actions. (Doc. No. 152 at 2.) Mr. McDermott represented Petitioner throughout the administrative proceeding and was able to probe much of the evidence against Petitioner in that set of proceedings. (*Id.* at 3.) Essentially the same evidence was utilized by the Government for proof at trial in the instant matter. (*Id.*)

In 2015, unbeknownst to Petitioner, Mr. McDermott's wife was tragically diagnosed with cancer and passed away on March 18, 2016. (*Id.*) Mr. McDermott has explained that

during this time period he immersed himself even further into his work to distract himself from the loss of his wife. (*Id.*)

After a four day trial, Petitioner was convicted of wire fraud. (Doc. No. 69.) On September 20, 2018, Petitioner initiated this action alleging ineffective assistance of counsel. (Doc. No. 142.) On April 15, 2019, the United States filed its opposition. (Doc. No. 152.) On June 27, 2019, Petitioner filed a reply. (Doc. No. 155.) Further, on August 19, 2019, Petitioner filed a motion to appoint counsel. (Doc. No. 157.)

## **LEGAL STANDARD**

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783–84 (1979) (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F.2d 970, 973 (9th Cir. 1981).

## **DISCUSSION**

Petitioner filed his motion to vacate on the basis of ineffective assistance of counsel and also filed a motion for appointment of counsel for an evidentiary hearing. The Court will address both motions in turn.

A. <u>Ineffective Assistance of Counsel</u>

"[T]o establish ineffective assistance of counsel, a party must demonstrate (1) that counsel's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different." *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001) (citing

*Strickland v. Washington*, 466 U.S. 668, 687–91 (1984)). Accordingly, "to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance *and* resulting prejudice." *Id.* (emphasis in original). Furthermore, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689.

Here, Petitioner alleges that his counsel failed to review the discovery in his case, failed to interview witnesses, did not conduct a proper pretrial investigation, failed to provide advice about pursuing plea negotiations or to proceed to trial, and failed to argue at trial that there was insufficient evidence of Petitioner's participation in the alleged conspiracy. (Doc. No. 142 at 9.)

    *i.    Review of Discovery*

Petitioner alleges that his counsel failed to review discovery and conduct a proper investigation due to the tragic death of counsel's wife. (Doc. No. 142 at 10.) Specifically, Petitioner highlights the fact that Mr. McDermott asked him questions such as "have you seen a signed plea agreement?," "It is a must that we go through these dox early next week so I have an understanding of what we have," "what do we know is no longer available as to records in your case/ Phone, bank?," and "is this email found in discovery?" (*See generally id.*) Mr. McDermott declares that he does send copies of discovery to his clients to keep them fully informed of the case, but does not ask his client to perform the work. (Doc. No. 148-1 at 2.) The Court find that this is in fact establishes effective counsel by keeping Petitioner informed of his case. Asking Petitioner these questions simply does not rise to the level of ineffective assistance of counsel.

Further, Petitioner's counsel began his representation in 2013. (Doc. No. 148-1 at 2.) In January 2016, Petitioner's counsel represented Petitioner in an administrative discharge proceeding by the Marine Corps. (*Id.* at 3.) Prior to this hearing, Mr. McDermott reviewed all of the evidence presented in discovery by the Marine Corps. (*Id.*) The evidence

was essentially the same evidence that was presented by the Government in the federal prosecution. (*Id.*) Petitioner asserts that the United States may not argue that Mr. McDermott was effective counsel since he represented him in the administrative proceeding in front of the Marine Corps. (Doc. No. 155 at 4–5.) The administrative proceeding in front of the Marine Corps does not utilize Federal Rules of Evidence and Petitioner also claims it does not afford for due process of law. (*Id.*) However, the fact that Mr. McDermott represented Petitioner in the Marine Corps administrative proceedings is not being offered to prove the fact that because he was effective in that proceeding he must have been effective counsel at trial. Rather, it is evidence to illustrate that Mr. McDermott conducted an adequate pretrial investigation as he had to prepare for the administrative hearing where the issues were substantial similar to those presented at trial.

Accordingly, the Court finds that Petitioner has failed to establish that Petitioner's counsel's performance was unreasonable. Mr. McDermott adequately reviewed the discovery prior to the federal prosecution.

    *ii.*    *Interviews of Witnesses*

Petitioner claims that Mr. McDermott failed to interview witnesses. (Doc. No. 142 at 9.) "A claim of failure to interview a witness … cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (quoting *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976)). "Moreover, ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Id.* Petitioner has not identified any witness that would have provided helpful information. Further, Mr. McDermott did conduct witness cross-examination during his board proceedings. (Doc. No. 152 at 8.) Furthermore, Mr. McDermott cross-examined every government witness at trial. (*Id.*) Mr. McDermott did have a few semantic errors during those cross-examinations, specifically confusing phone calls for text messages and emails. (Doc. No. 142 at 12.) However, Petitioner does not provide how a further or different line of questioning would have been more effective. Furthermore, the semantic errors Petitioner

refers to were so minor they simply would not have resulted in a different outcome at trial.

  *iii.* *Pretrial Investigation*

Petitioner asserts that Mr. McDermott failed to conduct an adequate pretrial investigation. (Doc. No. 142 at 3.) "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Here, Mr. McDermott contacted the alleged co-conspirator and requested information during the NCIS investigation. (Doc. No. 148-1 at 3–4.) Furthermore, Mr. McDermott attempted to quash the administrative subpoena for Petitioner's bank account and defended Petitioner at the military proceedings. Further, Petitioner has failed to identify what information could have been identified from the non-investigated sources. Accordingly, Mr. McDermott conducted an adequate pretrial investigation.

  *iv.* *Plea Negotiations*

Petitioner asserts that Mr. McDermott did not provide Petitioner with any advice regarding a guilty plea. (Doc. No. 142 at 9.) However, no formal plea was ever extended by the United States. Mr. McDermott did not engage in extensive plea discussions in this case since Petitioner was unwilling to entertain the possibility of a guilty plea. (Doc. No. 148-1 at 2.).

"In order to prove prejudice where counsel fails to inform the petitioner about a plea offer, the petitioner must prove there was a reasonable probability he would have accepted the offer." *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997). Here, Mr. McDermott did not fail to provide a plea offer to Petitioner since one was never extended in this matter. Furthermore, Petitioner refused to even consider any plea agreement. Petitioner incorrectly argues in his reply that Mr. McDermott declared that he discussed the option of pleading guilty with Petitioner. However, Mr. McDermott did not submit in his declaration that he discussed the option of pleading guilty with Petitioner. Rather Mr. McDermott declares that Petitioner refused to consider any plea agreement and fought off any suggestion to plead guilty because Petitioner wished to maintain his retirement status with the Marine

Corps. (Doc. No. 148-1 at 4.) Accordingly, Mr. McDermott's conduct was reasonable.

    *v.    Insufficient Evidence of Petitioner's Participation in the Conspiracy*

Petitioner alleges that at trial Mr. McDermott failed to argue for insufficient evidence of Petitioner's participation in the conspiracy. (Doc. No. 142 at 13.) However, Mr. McDermott did make an oral Rule 29 motion on behalf of Petitioner arguing exactly that the United States had not presented sufficient evidence of a conspiracy to support a conviction. (Doc. No. 114 at 94–105.)

Petitioner also raises issue with the fact that Mr. McDermott made this argument during closing rather than at opening. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *McCoy v. Louisiana*, 138 S.Ct. 1500, 1508 (2018). Thus, it is well within Mr. McDermott's role to decide which arguments to make at trial and when they are presented during trial. Furthermore, Mr. McDermott made his Rule 29 motion at an appropriate time, which was after the United States had rested and could no longer cure any defects in its case. Accordingly, Mr. McDermott's did not fail to argue for insufficient evidence of Petitioner's participation in the conspiracy.

    *vi.    Prejudice*

Most importantly, Petitioner has failed to plead facts suggesting that Mr. McDermott's conduct resulted in prejudice. Prejudice is determined based on an objective evaluation. *See Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985). "[T]o demonstrate prejudice, the petitioner must show 'it is reasonably likely the result would have been different' but for counsel's ineptitude. And '[t]he likelihood of a different result must be substantial, not just conceivable.'" *Vega v. Ryan*, 757 F.3d 960, 969 (9th Cir. 2014) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011)) (citing *Strickland*, 446 U.S. at 694 (holding that petitioner must prove there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.")).

Here, Petitioner has failed to show how Mr. McDermott's misstatements that there

text messages and 17 to 20 emails instead correctly stating that there was 17 to 20 phone calls actually prejudiced Petitioner. It is not prejudicial to fail to distinguish between emails and phone calls and text messages. Petitioner has failed to establish how these fairly minor misstatements would have reasonably likely changed the result. Additionally, Petitioner's counsel's decision to keep Petitioner informed of the discovery process, also does not result in prejudice to Petitioner. Petitioner has failed to identify any evidence that would have changed the outcome of his trial. Petitioner has also failed to identify any evidence that Mr. McDermott failed to uncover and utilize at trial.

Further, the likelihood of a different result based on these allegations is far from substantial. The evidence against Petitioner at trial was strong. At trial, the United States introduced email evidence of Petitioner's co-conspirators committing the charged crime. The United States also introduced a financial analysis that found no evidence of the alleged rent payments ever being made or received. Petitioner and Storm's credit card statements also established a pattern of residence in the homes they owned and not the homes they were claiming to rent. Furthermore, Storm pled guilty to wire fraud conspiracy.

Petitioner argues that prejudice should be presumed in this case because Petitioner was constructively denied counsel. (Doc. No. 142 at 10.) When "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," Petitioner will have been constructively denied counsel. *Bell v. Cone*, 535 U.S. 685, 697 (2002). However, the Court emphasized in both *Bell* and *United States v. Cronic*, 466 U.S. 648 (1984) that the attorney's failure must be complete and the attorney must entirely fail "to subject the prosecution's case to meaningful adversarial testing." *See id.* Here, Mr. McDermott did not entirely fail to subject the United States' case to meaningful adversarial testing. Petitioner points to the fact that Mr. McDermott asked Petitioner to review discovery and Mr. McDermott made minor speech errors to prove that Mr. McDermott was effectively unavailable at trial. This simply is not a *complete* failure to provide Petitioner with representation. Furthermore, Mr. McDermott cross-examined all of the United States' witnesses at trial, presented a Rule 29 motion, fought an administrative subpoena, and

represented Petitioner in the proceedings before the Marine Corps. Accordingly, Mr. McDermott's conduct does not rise to the level where prejudice is presumed.

B. Evidentiary Hearing and Appointment of Counsel

A district court must hold an evidentiary hearing before denying a § 2255 motion, unless it is conclusively shown that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b); *see Machibroda v. United States*, 368 U.S. 487, 494 (1962). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986). As explained above in greater detail, the Court finds that Petitioner has failed to state a claim and has not provided the Court with more than conclusory allegations. Accordingly, the Court finds that an evidentiary hearing is not required.

Petitioner alleges that on January 16, 2019, the Court ruled that an evidentiary hearing was necessary by virtue of the existence of controverted facts and accordingly, he requests that the Court appoint him counsel. (Doc. No. 157 at 1.) However, the Court did not hold that an evidentiary hearing was necessary, but rather set a briefing schedule and a hearing date for the instant motion. The Court finds that an evidentiary hearing is not required in this case. Accordingly, the Court **DENIES** Petitioner's motion for appointment of counsel.

C. Certificate of Appealability

Absent a certificate of appealability from this circuit court or the district court, "an appeal may not be taken from a final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255." *Chafin v. Chafin*, 568 U.S. 165, 184 (2013). A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court finds that Petitioner has not made the

necessary showing. Thus, a certificate of appealability is therefore **DENIED**.

## **CONCLUSION**

Based on the foregoing, the Court **DENIES** Petitioner's motion to vacate and **DENIES** Petitioner's motion to appoint counsel.

**IT IS SO ORDERED.**

Dated: January 8, 2020

*[signature]*
Hon. Anthony J. Battaglia
United States District Judge